IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:20cr281-2 |
| | ) | |
| TRAVIS MICHAEL EVANS | ) | |

**ORDER**

A federal grand jury for this district indicted the defendant for conspiracy to distribute cocaine hydrochloride and marihuana, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A) & (b)(1)(B), and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). (See Docket Entry 1.) The case thereafter came before the Court for a hearing on an oral motion for detention by the United States, pursuant to 18 U.S.C. § 3142(f)(1)(B) and (C). (See Docket Entry dated Aug. 3, 2020.) At the end of the hearing, the Court orally ordered the defendant's detention because clear and convincing evidence established that no set of available release conditions would reasonably assure the safety of the community and a preponderance of the evidence established that no available release conditions would reasonably assure the defendant's appearance. (See id.) The Court now enters this written order memorializing that ruling as required by 18 U.S.C. § 3142(i)(1).

BACKGROUND

A United States Probation Officer prepared a report regarding the defendant's history, residence, family ties, employment, financial resources, health (including as to mental health and substance abuse issues), and prior record. Both parties had an opportunity to review that report before the detention hearing. The defendant conceded the accuracy of the factual information in the report and was "afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear[ed] at the hearing, and to present information by proffer or otherwise," 18 U.S.C. § 3142(f). In that regard, the defendant cross-examined the law enforcement officer called by the United States.

DISCUSSION

Given the nature of the charge in this case, "[s]ubject to rebuttal by the [defendant], it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community," 18 U.S.C. § 3142(e)(3).[1]  "[T]he presumption operate[s] at a

---

[1] A federal grand jury indicted the defendant for violating 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A) & (B). (See Docket Entry 1.) A finding of probable cause to believe a defendant committed such offense triggers the cited presumption of detention. See 18 U.S.C. § 3142(e)(3)(A) (indicating that presumption applies to offenses under the Controlled Substances Act, 21 U.S.C. 801 et seq., punishable by a maximum term of imprisonment of ten years or more); 21 U.S.C. §§ 841(b)(1)(A) & (B) (imposing maximum prison sentences of life and forty years, respectively). "[T]he appeals courts that have addressed this issue have uniformly concluded that the judicial officer may rely on a grand jury indictment to establish probable cause for the purpose of triggering the
(continued...)

-2-

minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." United States v. Alatishe, 768 F.2d 364, 371 (D.C. Cir. 1985) (emphasis omitted).[2]

"Even when a defendant satisfies his burden of production, however, 'the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court.' The presumption remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be

---

[1](...continued)
rebuttable presumptions in section 3142(e)." United States v. Vargas, 804 F.2d 157, 163 (1st Cir. 1986) (citing and joining position of United States Courts of Appeals for the Second, Sixth, Seventh, and Eleventh Circuits); accord United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996); United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986). District courts in this Circuit uniformly follow the same rule. See, e.g., United States v. Glover, No. 5:10-cr-258-F-5, 2010 WL 3245526, at *1 (E.D.N.C. Aug. 17, 2010); United States v. Boyd, 484 F. Supp. 2d 486, 488 (E.D. Va. 2007). Moreover, as detailed below, the evidence at the hearing confirmed the existence of probable cause.

[2] Numerous courts have held that "section 3142(e)(3)'s presumption in favor of detention imposes only a 'burden of production' on the defendant." United States v. Stone, 608 F.3d 939, 945 (6th Cir. 2010) (citing as examples decisions from the Second and Seventh Circuits); accord United States v. Hir, 517 F.3d 1081, 1086 (9th Cir. 2008); United States v. Abad, 350 F.3d 793, 797 (8th Cir. 2003); United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir. 1991); United States v. Quartermaine, 913 F.2d 910, 916 (11th Cir. 1990); United States v. Hare, 873 F.2d 796, 798 (5th Cir. 1989); United States v. Carbone, 793 F.2d 559, 560 (3d Cir. 1986); United States v. Hill, No. 1:06cr82-1, 2007 WL 547611, at *1 (N.D. W. Va. Feb. 16, 2007).

detained prior to trial." United States v. Stone, 608 F.3d 939, 945 (6th Cir. 2010) (citation omitted) (quoting United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001)); accord United States v. Hir, 517 F.3d 1081, 1086 (9th Cir. 2008); United States v. Abad, 350 F.3d 793, 797 (8th Cir. 2003); United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); United States v. Stricklin, 932 F.2d 1353, 1355 (10th Cir. 1991); United States v. Hare, 873 F.2d 796, 798-99 (5th Cir. 1989); United States v. Dominguez, 783 F.2d 702, 707 (7th Cir. 1986); United States v. Medina, 775 F.2d 1398, 1402 (11th Cir. 1985).[3]

In resolving the issue of release or detention, the Court has considered, along with the statutory presumption, the following statutorily prescribed factors: "(1) the nature and circumstances of the offense[s] charged, including whether the offense[s] . . . [involve] a controlled substance . . .; (2) the weight of the evidence against the [defendant]; (3) the history and characteristics of the [defendant] . . .; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g). Based on the record before it, the Court makes the following findings of fact and/or conclusions of law:

---

[3] Courts in this Circuit also have taken that position. See, e.g., United States v. Jinwright, No. 3:09cr67, 2010 WL 2926084, at *1 (W.D.N.C. July 23, 2010); United States v. Moore, No. 2:09cr222-41, 2010 WL 1006205, at *2 (S.D. W. Va. Mar. 16, 2010); Hill, 2007 WL 547611, at *1.

-4-

1) the offense charged against the defendant is serious, including as reflected by the above-discussed presumption of detention, the applicable penalties, and the language of the Bail Reform Act, and involved circumstances (detailed below) that endangered the community, see, e.g., United States v. Caro, 597 F.3d 608, 624 (4th Cir. 2010) ("[I]llegal drugs have long and justifiably been associated with violence."); United States v. Peterson, Nos. 95-5407, 95-5449, 95-5518, 95-5519, 210 F.3d 363 (table), 2000 WL 305137, at *13 (4th Cir. Mar. 24, 2000) (unpublished) ("Drug trafficking is an extremely serious crime with far-reaching effects."); United States v. Melquizo, 824 F.2d 370, 371 (5th Cir. 1987) ("We find that a possible sentence of ten years is also sufficient indication that the offense is serious."); 21 U.S.C. § 841(b)(1)(A) & (B) (imposing respective minimum sentences of ten and five years, as well as respective maximum prison sentences of life and forty years); 18 U.S.C. §§ 1956(a)(1) (imposing maximum prison sentence of twenty years), 3142(g)(1) (citing issue of whether offense "involves . . . a controlled substance" as significant to assessment of risks relevant to detention decision);

2) the weight of the evidence against the defendant appears sufficient to support a conviction beyond a reasonable doubt, in that:

A) in November 2018, federal agents began investigating drug activity in Chapel Hill, North Carolina, and, through a series

-5-

of enforcement operations, search warrant executions, and debriefings, ultimately discovered a drug and money laundering conspiracy stretching from the Eastern District of California to the Middle District and Eastern District of North Carolina;

      B) during that investigation, federal agents obtained evidence showing that the defendant and his co-defendants purchased large quantities of marijuana from a supplier, Francisco Ochoa, in the Eastern District of California and then utilized individuals to transport the marijuana in vehicles from the Eastern District of California to the Eastern District and Middle District of North Carolina;

      C) several months later, upon the defendant's request for shipments of cocaine hydrochloride, Ochoa shipped large quantities of cocaine hydrochloride via the United States Postal Service from the Eastern District of California to the Eastern District and Middle District of North Carolina;

      D) in return, the defendant and his co-defendants shipped large quantities of United States currency via the United States Postal Service to the Eastern District of California from the Eastern District and Middle District of North Carolina;

      E) the defendant and his co-defendants also utilized bank accounts to provide payments to Ochoa in amounts less than $10,000.00;[4]

---

[4] At the hearing, the federal agent testified that federal law requires the generation of a currency transaction report for
(continued...)

F) the investigation revealed that the defendant and his co-defendants distributed approximately 100 kilograms of cocaine hydrochloride and approximately 1000 pounds of marijuana;

G) several co-defendants identified the defendant as a distributor of cocaine hydrochloride and marijuana, with responsibility for distributing approximately 30 kilograms of cocaine hydrochloride;

H) the defendant reportedly directed co-defendant Briahna Haskell to make deposits and transfers in an attempt to conceal the drug transactions;

I) ultimately, the investigation revealed that the defendant and his co-defendants made drug and money laundering transactions in an estimated amount of $1.3 million dollars;

J) federal agents utilized search warrants to obtain information from co-defendants' iCloud accounts which revealed discussions between the defendant and co-defendants regarding the controlled substance shipments and financial transactions and also revealed video footage of the defendant involved in the related conduct; and

K) in a separate investigation, law enforcement officers in New Hanover County, North Carolina, seized three pounds of

---

[4](...continued)
any transaction involving an amount greater than $10,000.00.

-7-

Case 1:20-cr-00281-CCE   Document 24   Filed 08/06/20   Page 7 of 10

marijuana and $20,000.00 from a safe in a garage attached to a residence that the defendant shared with his girlfriend;[5] and

    3) the history and characteristics of the defendant raise the following concerns regarding danger to the community (including in the form of continued drug-dealing)[6] and the risk of non-appearance his release would present:

        A) on December 13, 2018, the defendant was charged with Felony Possession with Intent to Manufacture, Sell, and Deliver Schedule VI Controlled Substances, Felony Maintain a Vehicle/Dwelling/Place for Controlled Substances, and Misdemeanor Possession of Marijuana Paraphernalia in Sampson County, North Carolina, and the conspiracy allegedly continued after the defendant's arrest on those charges, which remain pending;

        B) on February 19, 2020, the defendant was charged with Misdemeanor Conspiracy Possess Marijuana and Misdemeanor Soliciting Sale of Marijuana in Pitt County, North Carolina, and, upon conviction, received a sentence of 30 days' imprisonment for each charge; and

        C) the defendant has no verifiable employment history.

---

[5] Law enforcement officers also located the defendant's girlfriend's cellular telephone number in the contacts list of the cellular telephone of a conspirator in the Eastern District of California.

[6] Drug-dealing poses a danger to the community within the meaning of 18 U.S.C. § 3142. See United States v. Williams, 753 F.2d 329, 333-36 & n.13 (4th Cir. 1985) (reversing release order).

Even assuming that the defendant rebutted the statutory presumption of detention through his proffer of a third-party custodian, a period of release without flight and self-surrender, and the lack of a significant prior record, the Court concludes that the record establishes by clear and convincing evidence that no available release conditions would reasonably assure the safety of the community and by a preponderance of the evidence that no available release conditions would reasonably assure the defendant's appearance.  In particular, the defendant's involvement with both intrastate and interstate travel of controlled substances, the large quantities of funds and controlled substances involved in the instant offense conduct, and the presence of a large quantity of cash and controlled substances in the defendant's residence at the time of his instant arrest all indicate high-level drug activity, access to significant funds, and ability to conduct clandestine drug activity which could facilitate flight.  Further, the defendant has failed to identify an appropriate third-party custodian.  The record reflects that the defendant's proposed third-party custodian resided in a home with the defendant where drug activity occurred and that she engages in significant work activity outside of the home, both of which call into question her ability to adequately supervise the defendant.  Under these circumstances, the Court cannot release the defendant.

**IT IS THEREFORE ORDERED** that the oral Motion for Detention by the United States is **GRANTED** and the defendant shall be detained

-9-

Case 1:20-cr-00281-CCE   Document 24   Filed 08/06/20   Page 9 of 10

pending disposition of the instant charges pursuant to 18 U.S.C. § 3142(e)(1).  The defendant is committed to the custody of the United States Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal.  The defendant shall have a reasonable opportunity for private consultation with defense counsel.  On order of a United States court or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

                                          /s/ L. Patrick Auld
                                            **L. Patrick Auld**
                                        **United States Magistrate Judge**

August 6, 2020